ADVANCED CARDIOVASCULAR SYSTEMS, INC., Plaintiff,

v.

SCIMED LIFE SYSTEMS, INC., Defendant.

SCIMED LIFE SYSTEMS, INC., Counter-plaintiff,

v.

ELI LILLY AND CO. and Advanced Cardiovascular Systems, Inc., Counter-defendants.

Civ. No. 3–90–0092.

United States District Court, D. Minnesota, Third Division.

July 30, 1991.

Richard A. Bardin and Craig A. Bailey, Fulwider, Patton, Lee and Utecht, Los Angeles, Cal., Leon R. Goodrich, Marko J. Mrkonich and Kathleen M. Mahoney, Oppenheimer, Wolff and Donnelly, St. Paul, Minn., for plaintiff.

Robert C. Morgan, Kenneth B. Herman, Eric R. Hubbard and Jane A. Massaro, Fish and Neave, New York City, Wayne Popham, Bruce H. Little, Popham, Haik, Schnobrich and Kaufman, Minneapolis, Minn., Jerold S. Solovy, Donald R. Harris, Richard P. Steinken and Christopher D. Liguari, Jenner and Block, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the court upon defendant Scimed Life Systems' two motions for summary judgment. For the reasons set forth below, the motions are denied.

## FACTS

This is a patent infringement case [1] in which plaintiff Advanced Cardiovascular Systems, Inc. (ACS) claims that defendant Scimed Life Systems, Inc. has infringed ACS's patent for a certain angioplasty catheter. Angioplasty is a medical procedure in which the catheter is used to widen cholesterol-clogged blood vessels with the goal of avoiding more intrusive surgery for heart disease. The surgeon uses the catheter by inserting the tip into a vessel, guiding it to the clogged area, and inflating a small balloon near the tip. The inflated balloon presses against the cholesterol-clogged vessel walls and increases the diameter of the opening through the vessel.

The ACS catheter at issue is the brainchild of Wilfred J. Samson, who acquired two patents now owned by ACS, United States Patents 4,582,181 (the "181 patent") and Re. 33,166 (the "166 patent") for the catheter. The innovation, stated basically, is a steerable guide element (wire) fixed to the catheter which results in a thinner catheter. A thinner catheter is better suited for some operations. At the very tip of the wire is a small coil which aids the guiding of the catheter to the desired location.

The 181 patent was issued on April 15, 1988. Two years later Samson sought broader protection for the catheter and applied for reissue of the patent. The 166 reissue patent was issued on April 15, 1988. It contains the same description as the 181 patent.

The descriptive portions of the two patents describe the method by which the coil is attached to the guide wire as follows. The adhesive is shown in Figure 2 of the patent as a blackened region designated by the reference number "46" and is at Column 2, lines 58–60 of the patent. The 166 patent also discusses the use of gold alloy brazing. At Column 3, line 17, the patent begins the description of how the end portions of the safety wire may be affixed to the shaft and to the distal end of the coil "by suitable means such as brazing." The braze material is described as "a radio

opaque material such as gold or gold alloy." According to the affidavits submitted by ACS, knowledge of brazing and its applicability to angioplasty catheters is common in this particular industry. Next, the patent describes brazing with radiopaque material "at 46" (where the coil is affixed to the guide wire). The brazing, according to the patent, bonds a safety wire to the guide wire, which by general definition includes both the coil and the core of the wire. See Col. 2, lines 36–38.

Samson applied for the reissue patent (the 166 patent) to seek broader protection for his claimed invention. The reissue decision was made because Samson retained new counsel in the intervening period. The new counsel determined that the claims of the 181 patent did not extend protection for the invention as far as they could. The application stated as grounds for reissue error on the part of the attorney who handled the first application. The reissue application goes on to note the protectable features not noted in the original application, and states that the error was inadvertent and that there was no deceptive intent in the first filing. The patent examiner subsequently requested a declaration specifying how the errors arose. Samson then filed a supplemental declaration in which he stated "I am unaware of how the error occurred but it obviously occurred during the preparation and prosecution of the application ..." The supplemental declaration further details the retention of new counsel and consequent decision to seek broader protection. That satisfied the patent examiner, who subsequently issued the 166 patent.

## DISCUSSION

Pursuant to Fed.R.Civ.P. 56, the court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Here, Scimed asserts the defense of patent invalidity based on the following two issues: 1) Is the ACS patent

---

1. The counterclaims, not relevant to these motions, involve different issues which will not be discussed here.

invalid for failure to comply with 35 U.S.C. § 112; and 2) Is the ACS reissue patent invalid because of a defective reissue oath. The court looks to these issues in turn.

## I. The § 112 Issue

■ Scimed contends that the ACS patent is invalid because it fails to set forth the best mode for attaching the coil to the guide wire—brazing. 35 U.S.C. § 112, which includes the best mode requirement, provides in pertinent part:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best made contemplated by the inventor of carrying out his invention.

Determination of the "best mode" issue is a question of fact based on two prongs: 1) whether the inventor subjectively contemplated the best mode at the time of application, and 2) whether the best mode is adequately disclosed to enable one skilled in the particular art to practice the invention. *See Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.,* 927 F.2d 1200, 1209 (Fed.Cir. 1991). If a patent is to be rejected, the defendant must show that the "quality of an applicant's best mode disclosure is so poor as to effectively result in concealment." *DeGeorge v. Bernier,* 768 F.2d 1318, 1324 (Fed.Cir.1985) § 112 has further been explained as follows:

The essence [of the enablement requirement] is that a specification shall disclose an invention in such a manner as will enable one skilled in the art to make and utilize it. Separate and distinct from [the enablement requirement] is the [best mode requirement], the essence of which requires the inventor to disclose the best mode contemplated by him, as of the time he executes the application of carrying out his invention.

*In re Gay,* 309 F.2d 769, 50 C.C.P.A. 725 (1962). The purpose of the provision is to prevent inventors from having their cake—patent protection—and eating it too—the retention of the exclusive ability to make the invention due to inadequate disclosure. *Id.*

In the instant case, the court concludes that Scimed has failed to establish that the ACS patent fails to adequately disclose the brazing technique. Scimed's claim of concealment rings hollow when one analyzes the actual applications. The patent notes the use of brazing at the juxtaposition of the guide wire and the coil. Although it also explicitly discusses the use of an epoxy to bond the guide wire to the coil, but the question before the court is concealment. The application, taken as a whole, could be more explicit in discussing brazing; but the discussion is not so deficient as to constitute concealment.[2] Accordingly, summary judgment declaring the patent invalid is not appropriate.

## II. The Reissue

■ Scimed further argues that the ACS patent is invalid because there is no adequate justification for the reissue application.

35 U.S.C. § 251, the patent reissue statute, states in pertinent part:

Whenever any patent is, through error without any deceptive intention, deemed wholly or partially inoperative or invalid, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the commissioner shall, on the surrender of such patent, and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent.

The patent office requires that the applicant for reissue must "specify ... the errors relied upon, and how they arose or

---

**2.** For this reason, the court will not address the evidence of Samson's subjective best mode con-   templated at the time of the application.

occurred[.]" 37 C.F.R. § 1.175(a)(5) and (a)(3). "Failure of the attorney to claim the invention sufficiently broadly is 'one of the most common sources of defects.'" *Scripps Clinic Research FDN v. Genentech, Inc.,* 927 F.2d 1565, 1575 (Fed.Cir. 1991) (quoting *In re Wilder,* 736 F.2d 1516, 222 (Fed.Cir.1984), *cert. denied,* 469 U.S. 1209, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985)). "[T]he purpose of the reissue statute is to avoid forfeiture of substantive rights due to error made without intent to deceive." *Id.*

Applying these principles to the instant case, the court concludes that Scimed has failed to establish patent invalidity due to insufficient specification of the reasons for reissue. The key, as noted above, is deceptive intent. The court, as did the patent examiner, finds no such intent here. The patent examiner requested a more detailed explanation of the error, Samson did the best he could, and the patent examiner accepted the explanation. To expect a detailed inquiry into the thought processes of the attorney who worked on the first application is simply not reasonable. Because there is no evidence of intent to deceive and the reissue application, as supplemented, was sufficiently detailed, summary judgment motion is not appropriate on the reissue claims.

Accordingly, IT IS ORDERED that:

1. Scimed's motion for summary judgment for failure to comply with § 112 is DENIED.

2. Scimed's motion for summary judgment on the reissue claims is DENIED.

3. The motion for sanctions is DENIED.